IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FREDERICK PANKO,

    Petitioner,                      Case No.2:05-cv-2610 ALA (HC)

    vs.

TERESA SCHWARTZ, Warden,

    Respondent.                    <u>ORDER</u>

_____/

    Pending before this Court are Frederick Panko's ("Petitioner") application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(a) filed on December 23, 2005 (doc. 1), Respondent's response (doc.18), and Petitioner's traverse (doc.19).  Also, before the Court are the parties' briefs in response to this Court's December 18, 2007 order, requesting supplemental briefing on the applicability of *Irons v. Carey*, 505 F.3d 846 (9th Cir. 2007), if any, to this matter.  For the reasons discussed below, Petitioner's application is denied.

**I**

    Petitioner is lawfully in the custody of the California Department of Corrections and Rehabilitation.  On September 23, 1987, Petitioner entered a *nolo contendere* plea to the crime of second degree murder in the Alameda County Superior Court.  He was sentenced to serve seventeen years to life on May 11, 1998.  On November 24, 2003, the California Board of Prison

1

Terms ("BPT") found Petitioner unsuitable for release on parole.

On October 19, 2004, Petitioner filed a petition for habeas corpus relief in the Supreme Court of California. In his state petition, he raised three federal constitutional issues. Petitioner contended that the Alameda County District Attorney's Office violated the plea agreement by arguing against his eligibility for release on parole before the BPT, notwithstanding the fact that Petitioner pled *nolo contendere* to second degree murder so that he would be eligible for release on parole after he had served seventeen years of imprisonment. He also argued that the BPT violated California law by failing to make a proportionality finding that his crime was more egregious compared to the conduct of other prisoners convicted of second degree murder. Petitioner further asserted that the BPT's reliance on the nature of his offense and other unchanging factors violated the Due Process Clause of the United States Constitution.

The California Supreme Court summarily denied his petition for a writ of habeas corpus on September 21, 2005. Petitioner filed a timely application for a writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254(a) on December 23, 2005.

**II**

**A**

An application for a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "shall not be granted with respect to any claim that was adjudicated on the merits" in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

**B**

Petitioner alleged the same federal constitutional issues in his application that he exhausted before the California Supreme Court. He argues that the BPT's decision finding him unsuitable for release on parole was unsupported by some evidence.

In its response to Petitioner's application for a writ of habeas corpus, Respondent maintains that a prisoner does not have a federally protected liberty interest in parole under California Penal Code § 3041. This contention must be rejected because it is contrary to the Ninth Circuit's decision in *Sass v. California Board. of Prison Terms*, 461 F.3d 1123, 1127-28 (9th Cir. 2006). The Ninth Circuit held in *Sass* that "California's parole scheme gives rise to a cognizable liberty interest in release on parole." *Id.* at 1127 (citation omitted).

This Court must apply the law of this Circuit. *See Juniga v. United Can Co.*, 812 F.2d 443, 450 (9th Cir. 1987) (citation omitted) ("District courts are, of course, bound by the law of their own circuit and 'are not to resolve splits between circuits no matter how egregiously in error they may feel their own circuit to be.'").

## C

In *Superintendent v. Hill*, 472 U.S. 445, 454 (1985), the Supreme Court held that "revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by some evidence in the record." (citation omitted). This Court is bound by the Ninth Circuit's holding that the "some evidence" standard announced in *Hill* applies to parole release proceedings. *Sass*, 461 F.3d at 1128-29.

"To determine whether the some evidence standard is met 'does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.'" *Id.* at 1128 (quoting *Hill*, 472 U.S. at 455-56). "*Hill*'s some evidence standard is minimal, and assures that 'the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise

3

1 arbitrary.'" *Id.* at 1129 (quoting *Hill*, 472 U.S. at 457).

2    In *Irons v. Carey*, 505 F.3d 847, 853 (9th Cir. 2007) the Court held that

> where, as here, there is some evidence to support a finding that "the offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering" and the "motive for the crime is inexplicable or very trivial in relation to the offense," Cal. Code Regs., tit. 15 § 2402(c)(1)(D)-(E), we cannot say that the state court unreasonably applied *Hill*'s "some evidence" principle.

In *Irons*, the record showed that the BPT relied on the commitment offense in determining that the prisoner was not suitable for release on parole. *Id.* at 852.

The Ninth Circuit limited its holding in *Irons* as follows: "All we held in [*Sass*, 461 F.3d at 1125 and *Biggs v. Terhune*, 334 F.3d 910, 912 (9th Cir. 2002)] and all we hold today, therefore, is that, given the particular circumstances of the offenses of these cases, due process was not violated when these prisoners were deemed unsuitable for parole prior to the expiration of their minimum terms." *Irons*, 505 F.3d at 853-54. In an unusual comment in *Irons*, the panel expressed its aspiration that some future court decision will conclude that the BPT has the duty to grant parole where "there was substantial evidence in the record demonstrating rehabilitation." *Id.* at 854.

The Court stated:

> We hope that the Board will come to recognize that in some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from the relevant California statutes.

*Id.*

The *Irons* panel did not cite any authority to support its prognostication that the denial by the state court of habeas corpus relief, under such circumstances, would be "contrary to, or involve[] an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States" in violation of 28 U.S.C. § 2254(d)(1). No presently binding Ninth Circuit decision has fulfilled the prediction of the *Irons*'s panel.

4

In the precedential portion of the *Irons* decision, the Court held that "we must look to California law to determine the findings that are necessary to deem a prisoner unsuitable for parole, and then must review the record in order to determine whether the state court decision holding that these findings were supported by 'some evidence.'" *Irons*, 505 F.3d at 851. Under California law, a prisoner is unsuitable for parole if:

> (1) the prisoner committed the offense in an especially heinous, atrocious, or cruel manner;
> (2) the prisoner has a previous record of violence;
> (3) the prisoner has an unstable social history;
> (4) the prisoner has committed sadistic sex offenses;
> (5) the prisoner has a history of mental or psychological problems; and
> (6) the prisoner has engaged in serious misconduct while in prison.

Cal. Code Regs., tit. 15 § 2402(c).

Accordingly, this Court must determine whether "some evidence" supported the BPT's decision that Petitioner is not yet suitable for parole release because Petitioner "committed the offense in an especially heinous, atrocious, or cruel manner" and poses an unreasonable risk of danger to society if released from prison. Code Regs. tit. 15 § 2402(c).

**D**

The BPT's November 23, 2003, decision finding Petitioner not suitable for parole reads as follows:

> All right, let the record show that all interested parties have returned to the room - - I forgot to give you this. You can actually take the whole thing. Thanks. Now Frederick Panko, CDC number D, as in David, 71028. This Panel has reviewed all information received from the public, Mr. Panko, and relied on the following circumstances in concluding that you are not suitable for parole and would pose an unreasonable risk of danger to society or threat to public safety if released from prison at this time. This will be another one year denial, Mr. Panko. The offense was carried out in a vicious, brutal manner. This is the murder of Celia Garcia. The offense was carried out in a manner which demonstrates an exceptional insensitive disregard for human sufferings. This was - - This was where the prisoner shot the victim. He sot the victim twice. The prisoner claims that this was a - - and has claimed for some time that this was an accidental shooting, although he brought a .38 caliber revolver loaded with him to - - as he had stated, to give to the victim for her protection against her ex-husband. Then the

5

prisoner subsequently shot the victim claiming accidental discharge. However, the weapon was discharged twice. The prisoner was there prior to the victim getting there and - - almost 15 minutes prior to. These conclusions were drawn from the Statement of Facts wherein the prisoner caused the demise of the victim, Celia Garcia, with a .38 revolver. Previous record, the prisoner has a history of unstable, tumultuous relationships with others. We talked about this in the past as well. He developed a problem with alcohol around the age of 15, having problems with substance abuse in the military as well. As well as his mother, he had problems with her, being put up for adoption or to a foster home actually, and the prisoner had problems running away from his mother once she regained custody of him because, as the prisoner stated, she had a somewhat questionable lifestyle and the prisoner didn't want to be part of that lifestyle. The prisoner has failed previous - - has failed profit - - to profit from society's previous attempts to correct his criminality. We're talking about the prior YA term for statutory rape. The prisoner had an unstable social history of prior criminality with includes arrests for robbery, stolen vehicle, burglary, although all those were dismissed. As I mentioned, the prisoner had a history, a long history, until recent years after coming to prison he did not understand that he had an alcohol problem. Institutional behavior, the prisoner has not sufficiently participated in beneficial self-help and therapy programming at this time. Psychosocial report was adequate. Parole plans, adequate, two locations, the county of commitment as well as an alternate county of Solano. 3042 notices, the Hearing Panel notes opposition, specifically the District Attorney's office of Alameda County had a letter sent today dated November the 4th of this year, authored by Elaine T. McAndrew, was in opposition to a finding of suitability here today. Remarks, the Panel makes the following findings: That the prisoner still needs some self-help in order to face, discuss, understand, and cope with stress in a nondestructive manner to better understand the causative factors, Mr. Panko. Until progress is made, the prisoner continues to be unpredictable and a threat to others. Although he should be commended, he has been disciplinary free his entire incarceration. He's participated in AA. He's still ongoing in AA. However, these positive aspects of his behavior do not outweigh the factors of unsuitable at this time. Recommendations are to remain disciplinary free. And if it's available to you, to continue to participate in beneficial self-help programming to better understand the causative factors, Mr. Panko, as I mentioned..

**E**

Under *Irons*, this Court must look to California law to determine whether the BPT's decision that Petitioner was not eligible for release was supported by some evidence of one of the factors set forth in § 2402(c). The California Court of Appeal First Appellate Division in *In re*

6

*Caswell*, 92 Cal. App. 4th 1017 (2001) held that the BPT's decision that the release date granted to a prisoner should be rescinded because there was some evidence in the record that he had committed an atrocious crime. The facts in *Caswell* closely parallel the evidence acted upon by the BPT in the instant matter.

The Court of Appeal held in *Caswell* that "a prisoner's refusal to admit participation in the crime on matters of conflicting evidence does not necessarily constitute unsuitability for parole or mandate recession." *Id.* at 1033. The Court in *Caswell* relied on Section 2236 of Title 15 of the California Code of Regulations for this proposition. Section 2236 reads as follows:

> The facts of the crime shall be discussed with the prisoner to *assist in* determining the extent of personal culpability. The board shall not require an admission of guilt to any crime for which the prisoner was committed. A prisoner may refuse to discuss the facts of the crime *in which instance a decision shall be made based on the other information available* and the refusal shall not be held against the prisoner. (emphasis added).

The Court noted in *Caswell* that the prisoner "acknowledged responsibility and demonstrated remorse." *Id.* The prisoner in *Caswell* testified that "the crimes escalated because of his 'inability to control' and his 'omission to do anything to counter what [Englund] want[ed] [him] to do.'"

In *Caswell*, the prisoner was granted a parole and given a release date effective in September 2000 by a panel of the BPT. The panel found Caswell suitable for parole based on:

> his minimal criminal record and lack of significant history of violent crimes; his stable social history, his participation in education programs, self-help programs, and vocational programs while in prison; his maturity and age; his parole plans, including job offers and family support; his positive institutional behavior; and favorable psychological evaluations.

*Id.* at 1024. The BPT, sitting en banc, reviewed the grant of the parole release date. "[T]he Board ordered that a parole rescission hearing be conducted to determine whether there was good cause to rescind Caswell's parole." *Id.* The Board identified three reasons for ordering the parole rescission hearing: "(1) the extreme seriousness of the crime; (2) Caswell's minimization of his

involvement in the commitment offenses; and (3) Caswell's lack of remorse."

A panel of the BPT held a rescission hearing in March 1999. The panel rescinded Caswell's parole. It based its decision on "the extreme seriousness of the crimes and Caswell's minimization of his involvement." *Id.* at 1025. The rescission panel determined, however, that Caswell had shown "sufficient remorse." *Id.*

The Board's appeals unit denied Caswell's petition for relief. The Solano County Superior Court granted Caswell's petition for habeas corpus relief and ordered the Board to reinstate Caswell's parole release date. *Id.* The Board appealed to the California Court of Appeal.

The California Court of Appeal held that "parole may be rescinded if the granting panel failed to adequately consider the gravity of the [offense]." *Id.* at 1027 (citing *In re Johnson*, 35 Cal. App. 4th 160, 168-69 (1995)). The Court reversed the judgment of the Solano County Superior Court on the sole ground that there was some evidence in the record that the 1986 panel that ordered his release "failed to adequately consider the gravity of Caswell's criminal acts." *Id.* at 1034.

Thus, under the California Court of Appeal's interpretation of that state's law respecting parole release decision in *Caswell*, a release may be denied if there is some evidence to support the BPT's determination that the gravity of the offense poses an unreasonable threat to public safety, notwithstanding undisputed evidence of a prisoner's positive institutional behavior and participation in educational and self-help programs.

**III**

This Court has reviewed the decision of the BPT and the exhibits presented by the parties to assist the Court in ruling on Petitioner's application for a writ of habeas corpus. Contrary to Petitioner's assertions in his traverse and in his response to this Court's December 19, 2007, request for supplemental briefing regarding the applicability, if any, of *Irons* to this matter, the BPT's decision finding Petitioner unsuitable fo parole is supported by "some evidence" that he

would pose an unreasonable risk of danger to society if released from prison.

The BPT's decision was not based solely on "unchanging factors unrelated to postconviction performance." Pet's. traverse at 3. The BPT commended Petitioner for remaining free of being disciplined throughout his incarceration. The BPT concluded, however, that his positive performance while in confinement did not negate the factors that made him unsuitable for parole release.

The record shows that Petitioner shot his victim in the presence of her children as she tried to unlock her front door to escape him. The record also shows that he lay in wait for fifteen minutes until she arrived home. Notwithstanding the fact that he shot his victim twice in the head, Petitioner has never acknowledged responsibility for his crime. Instead, he has persisted in claiming that he brought the revolver to his victim's home at her request to protect her from her husband and it fired accidently. The record amply supports the BPT's finding that "the offense was carried out in a vicious, brutal manner."

The BPT also found that Petition has "a history of unstable, tumultuous relationships with others." The District Attorney presented evidence that "the prisoner never had a successful relationship with any woman." His first wife was the victim of a statutory rape. He was imprisoned at a California Youth Authority facility for that crime. Since his first marriage dissolved, he has been married six more times. Petitioner's fifth wife reported to the Hayward Police Department that Petitioner threatened her with a gun. Petitioner's bad relationships with women, which culminated in the killing of a girlfriend, understandably casts doubt as to whether his confinement behind prison walls in an all male institution has rehabilitated him so that he never poses a deadly danger to other females, including his seventh wife – especially in light of the fact that he has never accepted responsibility for the crime that caused his imprisonment.

The BPT also considered the fact that Petitioner failed "to profit from society's prior attempts to correct his criminality" after his youth authority commitment. In addition, the BPT found that Petitioner had failed to "sufficiently participate in beneficial self-help and therapy

programming" while incarcerated.

The BPT weighed the foregoing factors in concluding that there was "some evidence" to support its conclusion that Petitioner would pose an unreasonable risk of danger to society or threat to public safety if released from prison at this time." This Court lacks the power to reweigh the evidence considered by the BPT. The BPT's findings that Petitioner was unsuitable for release on parole was supported by some evidence and were not arbitrary. *Sass*, 461 F.3d at 1129.

## IV

In his application for habeas corpus relief, Petitioner argues that the BPT violated California law as set forth in Penal Code section 3041(a) and (b) by failing to make comparative findings to show petitioner's crime was particularly egregious compared to other second degree murders.

Whether the BPT made the findings required pursuant to section 3041(a) and (b) cannot be resolved before this Court because they present issues of state law not cognizable in federal court pursuant to section 2254(a). A district court lacks the power to reverse a state court's decision that a prisoner is entitled to relief unless it "was contrary to or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(a). In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Petitioner failed to cite any decisions of the United States Supreme Court that hold that it is a violation of federal law for a state court to deny release on parole for someone sentenced to serve life imprisonment because of the egregious nature of his or her offense without comparing the prisoner's conduct with other prisoner's charged with the same offense. Accordingly, this claim must be rejected.

## V

Petitioner contends that the District Attorney's representative violated due process by

failing to honor the terms of the plea agreement by opposing his release on parole at the BPT 2003 hearing. This contention mischaracterizes the terms of the plea agreement.

The Alameda County District Attorney's Office filed a complaint against Petitioner on February 24, 1987 in the San Leandro Municipal Court charging him with first degree murder and the use of a firearm in committing the alleged offense. The complaint also alleged that Petitioner inflicted great bodily injury in the commission of the alleged offense.

Petitioner appeared before a Municipal Court judge on September 23, 1987 for his preliminary hearing. He waived his right to a preliminary hearing to determine whether he should be tried for the alleged crime in the Alameda County Superior Court. Petitioner's counsel informed the court that Petitioner would enter a plea of no contest to the crime of second degree murder. Petitioner waived each of his pre-plea constitutional rights. He also informed the court that he understood that, if he pled guilty to murder in the second degree, he would be sentenced to serve a sentence of fifteen years to life. He also stated that if he admitted the use of a firearm, it would add two years to his sentence for a total of seventeen years to life.

Following this colloquy, Petitioner pled no contest to the crime of murder in the second degree, and admitted the use of a firearm. The allegation that Petitioner inflicted great bodily injury in the commission of the alleged offense was stricken pursuant to the District Attorney's motion.

After accepting Petitioner's plea and referring the matter to the probation department for its report and recommendation, the court stated to the prosecutor: "Just for the record, so there doesn't have to be resentencing [in the Superior Court] would you make a statement as to the reason for the plea bargain."

The prosecutor responded as follows:

> You, your honor, there are several reasons for the bargain. It is our understanding that at the time of the actual homicide both the Defendant and the victim were intoxicated. Secondly, apparently quite a record of the Defendant's being depressed in a clinical sense at the time of the homicide. There is an absence of criminal

11

> background for the Defendant. The Defendant is apparently 46 years old. The Defendant is a Vietnam veteran having served two years in Vietnam and is disabled. There apparently has been an explicit express of remorse on the part of the Defendant and apparently there is some indication of attempted suicide on the part of the Defendant at some point in time. All these factors from the Peoples point of view certainly warrants the disposition of this case, your honor.

Petitioner argues that the prosecutor's reference to the mitigating circumstances that he believed justified reduction of the charge from first degree murder to second degree murder must be construed as an agreement not to oppose Petitioner's suitability for release on parole. The prosecutor's statement made no reference to Petitioner's eligibility for release on parole.

The parties agreed that Petitioner would plead no contest in exchange for a reduction of the *charge* in the complaint. There was no commitment made by the prosecutor to recommend a lesser *sentence* nor did he promise not to oppose parole release prior to the end of Petitioner's lifetime sentence. Accordingly, the District Attorney's Office did not violate Petitioner's right to due process.

Therefore, it is hereby ORDERED that Petitioner's application for habeas corpus relief is DENIED.

/////

DATED: June 4, 2008

/s/ Arthur L. Alarcón
UNITED STATES CIRCUIT JUDGE
Sitting by Designation